IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Jason Berg, | |
| Plaintiff, | |
| v. | Civil Action No. 1:23-cv-00181-CFC |
| C&H Financial Services, Inc. | |
| Defendant. | |

## **MEMORANDUM**

This case arises from a disagreement over the management of a Delaware limited liability company named GEMS UP, LLC. GEMS UP is a technology and consulting company that provides services to businesses primarily in athletics and sports management in Minnesota. It has two members. The plaintiff, Jason Berg, owns 40% of the membership interests. The defendant, C&H Financial Services, Inc. (C&H), owns the other 60% and is GEMS UP's Manager. Berg has sued C&H. He alleges in the operative Amended Complaint six counts. Underlying all six claims is Berg's view that C&H has failed to do various things to make GEMS UP succeed.

Pending before me is Berg's motion for a temporary restraining order and preliminary injunction (D.I. 10) and C&H's motion to dismiss the Amended Complaint (D.I. 12).

## BACKGROUND

The following background is taken from the allegations in Berg's Amended Complaint (D.I. 7), which for present purposes are assumed to be true.

Berg founded GEMS UP in November 2018. At the outset, Berg had a 40% membership interest and the remaining 60% membership interest was held by Money Movers of America, Inc., an affiliate of C&H. Berg developed proprietary technology and software that is used by GEMS UP with its clients. Money Movers joined GEMS UP to provide expertise and direction regarding integrated payment servicing and processing for clients. The members drafted and adopted an Operating Agreement governing the management of the company and defining the rights and responsibilities of its members. The Operating Agreement designated Money Movers as the Manager of the LLC. (D.I. 7, Ex. A at p. 2).

In July 2019, Money Movers assigned its membership interests to C&H, with C&H agreeing to be bound by the Operating Agreement. Upon the assignment, C&H became the Manager of GEMS UP. Under the Operating Agreement, subject to a requirement of 66% member approval for certain actions not relevant here, "the business, property, and affairs of [GEMS UP] shall be

2

managed by the Manager [and] no other Member of [GEMS UP] shall have any authority or right to act on behalf of or bind [GEMS UP.]" (D.I. 7, Ex. A, at § 3.01). Berg, however, alleges that he handles the day-to-day operations of GEMS UP and that C&H has little or no involvement in the day-to-day operations of GEMS UP. (D.I. 7, ¶ 43; *see also id.* ¶ 14).

In June 2021, C&H proposed a financing transaction with a third party that would have given the third party control of GEMS UP. C&H dropped the proposal in July 2021 after Berg objected to it. Berg alleges that since then, C&H has "engaged in a pattern of behavior to undermine the efforts of Plaintiff to make GEMS UP a successful business venture." (D.I. 7, ¶ 64). Berg alleges that customers of GEMS UP have contacted C&H for assistance with the services they are receiving from GEMS UP, but C&H has failed to respond, thereby jeopardizing GEMS UP's business relationships, and that C&H has not developed or implemented a plan to expand the business of GEMS UP. (D.I. 7, ¶ 67). Berg also alleges that C&H decided to stop paying Berg salary and benefits for his work for GEMS UP. (D.I. 7, ¶¶ 69-70)

**PROCEDURAL HISTORY**

In July 2022, Berg sued C&H and its principals in state court in Minnesota. Berg later voluntarily dismissed that lawsuit. On February 17, 2023, Berg filed suit in this Court. His original complaint named several defendants,

3

including C&H. (D.I. 1). On March 1, 2023, Berg filed the Amended Complaint, naming only C&H as a defendant. (D.I. 7).

On March 28, 2023, Berg filed the pending motion for temporary restraining order and preliminary injunction, seeking a blanket prohibition against C&H "taking any action related to the management, operations, and affairs of GEMS UP, LLC...." (D.I. 10-1). Berg filed an opening brief and several affidavits in support of his motion. (D.I. 10-2 through 10-6). Berg's submissions did not identify any action that C&H was threatening to take that would cause Berg irreparable harm if not enjoined. On the contrary, Berg's concern seemed to be that C&H was failing to take any action with respect to GEMS UP. Berg's brief effectively acknowledged the pointlessness of his motion, conceding that "issuance of a temporary restraining order will have little impact on [C&H's] current behavior." (D.I. 10-2 at 12)

On April 6, 2023, C&H filed a motion to dismiss the Amended Complaint (D.I. 12) and an opening brief in support thereof (D.I. 13). On April 12, 2023, the parties submitted a stipulation extending the applicable briefing deadlines for their motions by several weeks, and I approved it. (D.I. 17). On May 3, 2023, the parties submitted another stipulation further extending the briefing deadlines, and I approved it. (D.I. 18).

On June 6, 2023, C&H filed an answering brief and supporting papers in opposition to Berg's motion for a temporary restraining order and preliminary injunction. (D.I. 20, 21, 22). On June 13, 2023, Berg filed a reply brief in further support of his motion for temporary restraining order and preliminary injunction (D.I. 23) and also filed an answering brief in opposition to C&H's motion to dismiss (D.I. 24). On June 20, 2023, C&H filed a reply brief in support of its motion to dismiss the Amended Complaint. (D.I. 27).

## ANALYSIS

As Berg acknowledges, to be entitled to preliminary injunctive relief, he must establish a likelihood of success on the merits. (D.I. 10-2 at 8). Accordingly, I will begin by considering C&H's motion to dismiss the Amended Complaint.

C&H argues that Berg's Amended Complaint must be dismissed under Rule 12(b)(6) because it fails to state a claim and that Berg's fraud claim must also be dismissed under Rule 9(b) for lack of particularity. C&H also argues that one of Berg's claims is derivative and must be dismissed for failure to plead demand futility under Rule 23.1(b)(3).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing the plausibility of a claim, the Court must accept all well-pleaded factual allegations in

the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). Nevertheless, the Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *Id.* at 216. Thus, "a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Moreover, a plaintiff may not supplement its pleading with allegations made only in subsequent briefs or affidavits. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

*Count I -- Breach of Fiduciary Duty*

Count I of the Amended Complaint alleges that C&H breached fiduciary duties of care and loyalty owed to Berg as a "co-member" of GEMS UP. (D.I. 7 ¶¶ 78-79). Count I does not allege that C&H owed or breached fiduciary duties to GEMS UP. Accordingly, it appears that in Count I Berg is attempting to plead a direct claim for breach of fiduciary, not a derivative claim. (I note that if Berg had attempted to plead a derivative claim, he would have been required to name GEMS UP as a nominal defendant. That would have defeated the pleaded basis for subject matter jurisdiction in this Court (*i.e.*, diversity), because a Delaware limited

6

liability company shares the citizenship of each of its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).)

C&H argues that Count I fails to state a claim for breach of fiduciary duty and that the Operating Agreement eliminated fiduciary duties as permitted by Delaware law. I will address the facial sufficiency of Berg's claim before attempting to resolve the parties' interpretive disputes about the relevant provisions of the Operating Agreement.

To plead a direct claim for breach of fiduciary duty, a "'stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.'" *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (*quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). "The stockholder's claimed direct injury must be *independent* of any alleged injury to the corporation." *Id.* at 1268 (*quoting Tooley*) (emphasis in original). This familiar analysis from the corporate context also applies to Delaware limited liability companies. *BET FRX LLC v. Myers*, No. CV 2019-0894-KSJM, 2022 WL 1236955, at *7 (Del. Ch. Apr. 27, 2022); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 887 (Del. Ch. 2009).

Here, the allegations Berg makes in support of his direct claim are that C&H "engaged in behavior that has been meant to frustrate, interfere, and interrupt the

7

operations of GEMS UP," and "engaged in behavior to make it difficult or impossible for Plaintiff to operate and expand GEMS UP's business." (D.I. 7 ¶¶ 78-79). These allegations do not allege an injury to Berg that is independent of any injury to GEMS UP or that could be proven without proving any injury to GEMS UP. They therefore fail to state a direct claim for breach of fiduciary duty. *BET FRX LLC v. Myers*, No. CV 2019-0894-KSJM, 2022 WL 1236955, at *7 (Del. Ch. Apr. 27, 2022). Accordingly, I will dismiss Count I.

*Count II -- Breach of Contract*

Count II of the Amended Complaint alleges that C&H "through its actions, ha[s] breached the terms of the Operating Agreement." (D.I. 7 ¶ 86). C&H argues that the Amended Complaint fails to state a claim for breach of contract because, among other things, it does not identify any provision of the Operating Agreement (or any other contract) that it is alleged to have breached. In his Answering Brief, Berg does not deny that to survive a motion to dismiss, a claim for breach of contract must identify a breached provision of a contract. Nevertheless, Berg does not cite any allegations in his Amended Complaint that do so. Instead, Berg argues in his brief that C&H breached Section 9.01 of the Operating Agreement by refusing to provide Berg with access to the GEMS UP financials and cites a declaration submitted in support of his motion for temporary restraining order and preliminary injunction. But the Amended Complaint does not reference Section

8

9.01 and does not allege when or how Berg invoked his rights under that section nor when or how C&H refused. A motion to dismiss tests the sufficiency of the allegations that are actually in the operative pleading, not allegations made in briefs or other motions. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Accordingly, I will dismiss Count II.

*Count III -- Tortious Interference with Contract*

The Amended Complaint alleges that C&H has tortiously interfered with unspecified contracts GEMS UP has with its clients by failing as GEMS UP's Manager to respond to clients adequately. (D.I. ¶¶ 89-94; D.I. 24 at 13-14) C&H argues that this allegation fails to state a claim.

A claim of tortious interference with contract is only available to someone who is a party to a contract that has been interfered with. *Am. Bottling Co. v. Repole*, No. CVN19C03048AMLCCLD, 2020 WL 7787043, at *6 (Del. Super. Ct. Dec. 30, 2020); Restatement (Second) of Torts § 766, comment *p* (1979). Berg does not allege that C&H interfered with a contract to which Berg is a party, but instead refers only to contracts GEMS UP has with its clients. Accordingly, I will dismiss Count III.

*Count IV – Fraud*

Count IV of the Amended Complaint accuses C&H of fraud. Under Rule 9(b), allegations of fraud are subject to heightened pleading requirements and must

9

"state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" has been interpreted to require a plaintiff to "place the defendant on notice of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 918–19 (3d Cir. 2018); *see also United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (requiring "the who, what, when, where, and how of the events at issue"). C&H argues that the Amended Complaint fails this test.

The entirety of the allegations in the Amended Complaint to set forth the fraud claim are as follows:

> Defendant, tortiously, unlawfully, fraudulently and without authority made false representations of past or present material that are susceptible of knowledge, knowing the facts are false or asserting it as of his own knowledge, intending to have the Defendant [sic] induced to act or justified in acting upon it, and Plaintiff was induced to act or justified in acting in reliance upon the representation which is the proximate cause of injury and damages of Plaintiff.

(D.I. 7, ¶ 96). Although paragraph 95 of the Amended Complaint incorporates into Count IV the preceding paragraphs of the Amended Complaint, nothing in those paragraphs provides the requisite particularity of an allegedly fraudulent representation necessary to satisfy Rule 9(b). *See Kirchner v. Wyndham Vacation*

10

*Resorts, Inc.*, No. CV 20-436-CFC, 2021 WL 1198314, at *3 (D. Del. Mar. 30, 2021).

In his brief, Berg asserts that "the fraudulent actions of [C&H] relate to their false representations to Mr. Berg that [C&H] would operate GEMS UP in a manner that would be in the best interest of the company and all members of GEMS UP. In reliance on those false representations, Mr. Berg agreed to enter into the GEMS UP Operating Agreement ...." (D.I. 24 at p. 14). The Amended Complaint, however, does not allege any such representations by C&H; nor does it explain how Berg could have relied on representations made by C&H before entering into the Operating Agreement with Money Movers. Accordingly, I will dismiss Count IV.

*Count V – Unlawful and Deceptive Trade Practices Act, 6 Del. C. § 2532*

Count V of the Amended Complaint attempts to assert a claim that C&H has violated Delaware's Uniform Deceptive Trade Practices Act (DTPA), 6 *Del. C.* § 2531 *et seq*. The Amended Complaint alleges that C&H "knowingly and intentionally used unfair or deceptive acts and practices and fraudulently induced [Berg] to enter into business relationships with [C&H] in violation of the statute" and that Berg was damaged as a result. (D.I. 7, ¶¶ 99-100).

Section 2532 of the DTPA sets forth a list of twelve categories of "deceptive trade practices." 6 *Del. C.* § 2532. Section 2533(a) provides that a "person likely

11

to be damaged by a deceptive trade practice of another may obtain an injunction against it." 6 *Del. C.* § 2533(a). The DTPA does not provide an independent damage remedy. *HSMY, Inc. v. Getty Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 623 (D. Del. 2006).

C&H argues that Count V fails to state a claim because it fails to allege what section of the DTPA was supposedly violated or what conduct by C&H supposedly fell within that section. In his brief, Berg does not attempt to defend the claim he asserted in the Amended Complaint (which was that he himself was the victim of deceptive acts in entering into a business relationship with C&H) and instead argues that C&H violated the DTPA by representing to GEMS UP customers that they would receive adequate service and then failing to provide it. (D.I. 24 at 16). That claim is not alleged in the Amended Complaint. Even if it were, it would likely not survive a motion to dismiss because the Delaware Supreme Court has held that the DTPA does not apply to a "retail consumer relationship" with the alleged deceiver. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993).

In any event, Berg does not allege that C&H is currently engaging in deceptive practices. He alleges only that he was damaged by C&H's deceptive practices in the past. The DTPA authorizes only claims for injunctive relief, not for damages. *HSMY, Inc. v. Getty Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 623 (D. Del. 2006). Accordingly, I will dismiss Count V.

*Count VI – Breach of Implied Covenant of Good Faith and Fair Dealing*

Finally, Count VI alleges that C&H breached an implied covenant of good faith and fair dealing inherent in the Operating Agreement. The implied covenant of good faith and fair dealing inheres in every Delaware contract and "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). The implied covenant involves a "cautious enterprise," and applies only to developments that the parties could not have anticipated. *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010). To prevail on an implied covenant claim, a plaintiff must plead and later prove "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). *See also BET FRX LLC v. Myers*, No. CV 2019-0894-KSJM, 2022 WL 1236955, at *5–6 (Del. Ch. Apr. 27, 2022).

C&H argues that Count VI fails to state a claim because the Amended Complaint does not identify a specific implied contractual term or allege how C&H has violated it. Berg concedes that to plead a claim for breach of the implied covenant, a complaint must, among other things, "allege a specific implied contractual obligation." (D.I. 24 at 17). The Amended Complaint, however, fails

13

to do so and instead is entirely generic and conclusory. (D.I. 7, ¶¶ 101-106).

Additionally, the Amended Complaint fails to include non-conclusory allegations of conduct by C&H that would support a plausible inference of bad faith. The relevant allegation in the Amended Complaint is that C&H breached the implied covenant of good faith and fair dealing by doing four things:

> [1] [causing] "the issuance and sale of additional membership units in GEMS UP to Priority", [2] ma[king] material misrepresentations, [3] breach[ing] the contract, violat[ing] the spirit and letter of the contract, [4] engag[ing] in arbitrary and unreasonable conduct that has the effect of preventing [Berg] from receiving the fruits of the contract, all of which thwarted the rights of [Berg] under the contract, unjustifiably hinder[ing] the performance of the contract[.]

(D.I. 7, ¶ 104). The first alleged act fails to state a claim because Berg alleges that the proposed transaction under which additional membership units in GEMS UP would have been issued did not in fact occur. (D.I. 7, ¶ 62) The second alleged act fails to satisfy Rule 9(b) for the same reasons discussed above with respect to Count IV. The third alleged act fails to state a claim for the same reasons discussed above with respect to Count II. The fourth alleged act is described only in terms of "labels and conclusions" that do not suffice to state a claim. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Accordingly, I will dismiss Count VI.

14

For these reasons, I will grant Defendant's motion to dismiss (D.I. 12). That ruling renders Berg's motion for a temporary restraining order and preliminary injunction (D.I. 10) moot.

The Court will issue an Order consistent with this Memorandum.

**3.25.24**
Date

CHIEF JUDGE COLM F. CONNOLLY